IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

            v.                                      21-CR-195-LJV

LAIRON GRAHAM a/k/a Shah,

                 Defendant.

_____

## GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Nicholas T. Cooper, Assistant United States Attorney, of counsel, hereby files the government's sentencing memorandum. For the reasons which follow, the government respectfully requests that the Court sentence the defendant to 264 months imprisonment, consistent with the high end of the range set forth in the 11(c)(1)(C) provision in the plea agreement. The government contends that such a sentence is the appropriate sentence when considering the factors under 18 U.S.C. § 3553(a). As the facts of this case demonstrate, the defendant has earned every single day of a 264-month sentence.

## I.      PROCEDURAL HISTORY

The defendant was charged by Second Superseding Indictment on November 1, 2022, with sixteen counts related to violations of Title 21, United States Code, Sections 846, 841(a)(1), and 856(a)(1) and Title 18, United States Code, Sections 924(c)(1)(A)(i),

924(c)(1)(A)(ii), 1591(a)(1), 1591(b)(1), 1594(c), 2421(a), 2422(a), and 2.  On April 27, 2023, the defendant entered pleas of guilty before the Court to Count 1 (Narcotics Conspiracy), Count 9 (Sex Trafficking by Force/Coercion), Count 9 (Sex Trafficking by Force/Coercion), Count 10 (Sex Trafficking by Force/Coercion), Count 11 (Sex Trafficking by Force/Coercion), and Count 13 (Sex Trafficking by Force/Coercion) of the Second Superseding Indictment.  Sentencing on this matter is currently scheduled to take place on January 5, 2023 at 1:00 pm.

## II.    SENTENCING PROCEDURE

The Supreme Court in United States v. Booker, 543 U.S. 220 (2005), excised Section 3553(b)(1) from the Sentencing Reform Act, which had strictly limited sentencing judges' discretion to the mandatory regime of the Sentencing Guidelines and Guidelines departures. Booker, 543 U.S. at 234, 236.  Today, after considering the Guidelines and all the applicable purposes of sentencing in Section 3553(a) of Title 18, a sentencing judge is required to decide whether to impose a Guidelines or non-Guidelines sentence.  United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005).

Title 18, United States Code, Section 3553(a) requires that this Court "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]."  In determining the sentence, this Court must consider the following:

1.    the nature and circumstances of the offense and the history and characteristics of the defendant;

2.    the need for the sentence imposed –

a.    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

b.    to afford adequate deterrence to criminal conduct;

c.    to protect the public from further crimes of the defendant; and

d.    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3.    the kinds of sentences available;

4.    the kinds of sentence and the sentencing range established for –

a.    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

i.    issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

ii.    that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

b.    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

5.    any pertinent policy statement –

a.    issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        b.      that, except as provided in section 3742(g), is in effect on the date
the defendant is sentenced.

6.      the need to avoid unwarranted sentence disparities among defendants
with similar records who have been found guilty of similar conduct; and

7.      the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).


        In executing these statutory responsibilities, the Court must first correctly calculate the applicable Guidelines range.  Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 596 (2007).  This range is "the starting point and the initial benchmark."  Id.  As the Second Circuit held, "[t]he Guidelines range . . . represents the Sentencing Commission's considered opinion about what the sentence should be in an 'ordinary' case, and therefore serves as the district court's 'starting point' in selecting a sentence.  The § 3553(a) factors, in turn, provide the sentencing judge with a set of criteria for potential variances, based on 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" United States v. Dorvee, 616 F.3d 174, 182 (2d Cir. 2010).  Although this Court must treat the Guidelines as advisory, United States v. Ratoballi, 452 F.3d 127, 131-32 (2d Cir. 2006), an error in determining the applicable Guideline range or the availability of departure authority nonetheless would be the type of procedural error that could render a sentence unreasonable on appellate review.  United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005); United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (a district court commits procedural error where it fails to calculate the Guidelines range, makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory).

While this Court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007), neither are sentencing judges "free to ignore the Guidelines, or to treat them merely as a 'body of casual advice.'" Cavera, 550 F.3d at 189, quoting United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005); see also United States v. Jones, 531 F.3d 163, 174 (2d Cir. 2008) ("respectful consideration of the Guidelines . . . necessarily channels district court sentencing discretion"). Further, the Second Circuit has observed that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be [upheld as] reasonable in the particular circumstances." United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006). See also United States v. Eberhard, 525 F.3d 175, 179 (2d Cir. 2008).

Next, after giving the parties an opportunity to argue for whatever sentence they deem appropriate (consistent with any limitations imposed by the plea agreement), this Court must then "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party." Gall, 128 S. Ct. at 596. In determining whether the § 3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented." Id., at 597. In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. See Cavera, 550 F.3d at 190-91.

### III.     ARGUMENT

The government submits that the Court should sentence this defendant to 264 months imprisonment. This is the top of the 11(c)(1)(C) range set forth in the plea agreement. Dkt. 276 at ¶ 27. As described below in greater detail, the defendant has earned it every minute of it.

### A.     The Factors Under § 3553(a) Support a Sentence of 264 months

#### a.     The Nature and Circumstances of the Offense

The defendant was responsible for leading an organization that acted as a 24/7 market for poison, poison in the form of fentanyl, heroin, and crack cocaine. The defendant was responsible for pedaling at least 1.8 kilograms of fentanyl and at least 1.8 kilograms of crack cocaine into an area of Buffalo already ravaged by drug abuse and commercial sex. In a selfish and greedy attempt to garb himself in fancy clothing and gold jewelry and drive expensive cars, the defendant sold vast amounts of the most dangerous drugs. The defendant's conduct as a leader/organizer of a narcotics conspiracy, while dangerous, damaging to the community, illegal, and morally reprehensible, is far from the most heinous conduct he engaged in.

Closely intertwined with the defendant's profession as a drug-trafficker was the defendant's profession as a violent, coercive and abusive pimp. The evidence in this investigation established that dating back to at least 2013, and extending into 2021, the defendant preyed on vulnerable, drug-addicted young women to enrich himself and to provide for his sexual gratification. The government's investigation into the defendant's sex

trafficking began when it discovered a video of the defendant viciously beating Victim 3 with a cane while screaming at her.  It didn't stop there.

As described in ¶ 39 of the PSR, upon first meeting Victim 1, the defendant initiated his "relationship" with her by raping and choking her in the backseat of his Cadillac escalade. Graham then moved Victim 1 into his "parole house" where he coerced and forced her to engage in commercial sex.  Graham went on to sexually assault Victim 1 numerous times while she was under his control.  Graham forced Victim 1 to engage in commercial sex so that he could take her money and so that he could gratify his own sexual desires at will. Graham set up the online advertisements, took the photos to post to the online advertisements, and oftentimes linked his own phone number and email accounts to the advertisements so that he would negotiate directly with the customer.  Graham left no decisions up to Victim 1.  Graham fueled Victim 1's addiction to heroin and crack cocaine, maintaining his control over her by controlling her supply of heroin and crack.  Victim 1, although addicted to heroin and stealing to support her habit, was not working as a prostitute before the defendant raped her and "turned her out".  **For his conduct involving Victim 1 alone, the defendant deserves to serve every single day of a 264-month prison term.**

As described in paragraph 42 of the PSR, Victim 2 met Lairon Graham in 2013 when he sold her crack at a gas station.  Not long after, the defendant moved her in to his "parole house" and coerced and forced her to engage in commercial sex activity by using a combination of violence, sexual assault, and manipulation of her drug addiction.  Victim 2 described how this defendant would "prepare her for clients" by anally raping her on a daily

basis, providing her with heroin and crack so that she could tolerate the pain. Lairon Graham physically beat Victim 2 when she would get too high to engage in commercial sex transactions (thus getting too high to earn Graham money) or if she disobeyed him. Lairon Graham took the money that Victim 2 made during commercial sex transactions and kept it for himself to buy clothes, cars, and jewelry. **For his conduct involving Victim 2 alone, the defendant deserves to serve every single day of a 264-month prison term.**

As detailed in ¶ 41 of the PSR, Victim 4 met Lairon Graham when she was already working as a prostitute. Graham moved Victim 4 into his "parole house" and provided her with drugs, clothing, and food. Victim 4 thought she was Graham's girlfriend at first, but Graham, a self-interested and greedy criminal, instead took nude photos of Victim 4, posted them on the internet, and forced her to engage in commercial sex transactions to earn her keep. Victim 4 described herself as a prostitute that Graham beat less than others because she was largely compliant with his rules. Victim 4 also described an incident where Graham punched her in the face and stabbed her in the neck with a screwdriver. When the defendant was incarcerated, he called Victim 1 and Victim 4 from jail and told them "Keep working and don't go anywhere." **For his conduct involving Victim 4 alone, the defendant deserves to serve every single day of a 264-month prison term.**

As disturbing, vile and inhumane as the defendant's treatment of Victims 1, 2, and 4 was, it does not depict the depth of the defendant's violent, abusive nature. For that, this Court must consider the defendant's treatment of Victim 3. As described in ¶ 43 of the PSR, Victim 3 suffered near-daily beatings at the hands of Lairon Graham from at least 2020

through August of 2021. Lairon Graham forced Victim 3 to engage in commercial sex transactions inside of 60 Liddell Street. Victim 3 would also, almost-certainly, have fallen into the category of victims that believed they were Graham's girlfriend. Victim 3 never agreed to testify truthfully about her victimization at the hands of Graham. Instead, her story was told by the numerous other witnesses that resided or frequented 60 Liddell Street and 46 Krupp Street in Buffalo New York. Witnesses observed Lairon Graham punch Victim 3. Witnesses observed Lairon Graham kick Victim 3. Witnesses observed Lairon Graham stomp on Victim 3's head. Witnesses observed Lairon Graham beat Victim 3 with a bike chain about her face, legs and back. Witnesses observed Lairon Graham put Victim 3's head through a wall. Witnesses observed Lairon Graham stab Victim 3 with needles. This Court will watch one such assault during the sentencing hearing. This Court, along with Victim 3's grief-stricken mother, will sit and watch Lairon Graham beat Victim 3 with a cane, telling her that he should kill her, and telling her that he hopes her fingers are broken (as she was undoubtedly attempting to block the cane blows with her hands). That video provides insight into a day-in-the-life of Victim 3. That video provides insight into the nature and circumstances of the offenses for which it is sentencing this defendant. **For his conduct involving Victim 3 alone, the defendant deserves to serve every single day of a 264-month prison term. If a 264-month prison sentence happens to constitute the rest of Graham's natural life, justice will be served. Lairon Graham was, and remains, a greedy, violent, self-interested, and evil human being.**

The five photographs below depict how the defendant spent his money (on gold jewelry), and the price that others paid for him to earn it.



*Depicting Graham decked out in numerous items of expensive gold jewelry.



Depicting Graham's gold "Grill" or gold-plated tooth covering.



Victim 3 with two black eyes, siezed from Cornelius Truesdale's cell phone.



Photograph of Victim 3 in Graham's drug-house located at 46 Krupp Street during a law enforcement search. September 30, 2020.



Photo provided by Victim 3's mother depicting her injuries while working as a prostitute for Graham.

  b. <u>The History and Characteristics of the Defendant</u>

   In order to qualify as a Criminal History Category VI, a person must have a minimum of 13 "points" for their prior criminal record.  *See* United States Sentencing Guidelines Sentencing Table.  Lairon Graham, in his career as a violent criminal, has accumulated 26 criminal history points, literally doubling the number of points for the highest category contemplated by the Sentencing Guidelines.  The defendant's criminal history includes felony convictions for Robbery, Attempted Robbery, Attempted Burglary, Attempted Criminal Possession of a Weapon in the Second Degree, Grand Larceny, and Criminal Possession of a Controlled Substance with Intent to Sell.  The defendant's misdemeanor convictions include a conviction for a domestic-violence related offense.  The defendant has been sentenced to probation, prison, and parole during his career as a criminal.  Nothing has served to rehabilitate him.  Nothing has served to stem his violent criminal conduct.  Nothing has protected the community from his crimes.  The defendant did not age out of his criminal activity either.  If anything, the defendant became more violent as he aged.  The conduct for which he is to be sentenced by this Court is by far the most serious.

   Far from truly acknowledging the wrongness of his actions once he was charged, the defendant went on a campaign to prevent co-conspirators from cooperating.  As detailed in the PSR at ¶ 49, the defendant wrote letters to co-defendant Udrea telling her to "keep [her] fucking mouth shut."  The defendant is a manipulator at his core.  Just as he attempted to manipulate Udrea in his letter to her, he attempted to manipulate Judge Roemer in letters to him in the early stages of his case.  He attempts to manipulate this Court with claims that he feels any remorse for his conduct.

The history and characteristics of this defendant make clear that a sentence of 264 months is necessary. The longer the defendant is incarcerated, the longer the community will be safe from his violence and depravity.

      c.    <u>The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense</u>

Under 18 U.S.C. § 3553(a)(2)(A), the Court should consider how the sentence fashioned reflects the seriousness of the offense. In order to achieve this end, the Court should consider the objective harm of the offense and the subjective culpability of the offender himself. In the instant case, the seriousness of the defendant's conduct should be viewed in light of the devastating impact that the sale of fentanyl, heroin, and crack cocaine have on our society as a whole. The seriousness of the defendant's conduct should also be viewed in light of the particularly violent and disturbing nature of his sex trafficking activity.

Title 18, United States Code, Sections 3553(a)(1) and 3553(a)(2)(A), provide this Court with the ability to consider the facts of the present case. The defendant has requested that the Court sentence him to the mandatory minimum. The government does not believe that such a sentence could possibly reflect the seriousness of this offense, nor could such a sentence possibly provide a just punishment for the offense. A sentence which reflects the seriousness of the offense, promotes respect for the law, and provides a just punishment, would be a sentence of 264 months. The sentence should reflect the pain and suffering endured by Victim 1, Victim 2, Victim 3, and Victim 4 at the hands of this defendant. The sentence should reflect the heinous nature of violent sex trafficking.

d.  <u>Deterrence</u>

Under 18 U.S.C. § 3553(a)(2)(B), the Court should consider whether a sentence affords adequate deterrence.  Unlike other sentencing considerations, the goal of deterrence is not to punish the crime at hand, but to achieve a practical end for the future—namely the prevention of crime.  Deterrence can be both specific to the defendant or general to the public.  As one court explained: "[s]pecific deterrence is meant to disincline individual offenders from repeating the same or other criminal acts. . . [while] [g]eneral deterrence attempts to discourage the public at large from engaging in similar conduct."  <u>United States v. Blarek</u>, 7 F. Supp. 2d 192, 210 (E.D.N.Y.), aff'd, 166 F.3d 1202 (2d Cir. 1998) (internal citations omitted).

A very severe sentence is necessary in this case to adequately provide deterrence, both specific and general.  As evidenced by the significant amount of cash discovered in the defendant's CashApp account, by the gold jewelry the defendant wore, and by the expensive cars the defendant drove, there are substantial rewards to selling drugs like fentanyl.  There are substantial monetary and material rewards for making money off of the suffering of vulnerable, drug-addicted young women.  This Court should ensure that there are penalties substantial enough to deter this defendant, and the public at large, from engaging in this destructive conduct.  The government submits that a sentence of 264 months imprisonment is necessary in this case to have an appropriate deterrent effect.  While the government knows that this Court never imposes significant incarceration lightly, or without great consideration, it is necessary in this case to have any real deterrent effect.  As to specific deterrence, this

Court should focus more on incapacitation. The defendant has made clear over the course of his entire life that he will not be deterred. The best this Court can do, and what justice demands this Court do, is remove this defendant from society for as long as possible. In this case, remove the defendant from society for 264 months.

      e.    <u>The Need to Protect the Public from Further Crimes of the Defendant</u>

Under 18 U.S.C. § 3553(a)(2)(C), the Court should consider whether a sentence considers the need for incapacitation. "Incapacitation seeks to ensure that offenders are rendered physically incapable of committing crime." <u>United States v. Blarek</u>, 7 F. Supp. 2d 192, 209 (E.D.N.Y.), aff'd, 166 F.3d 1202 (2d Cir. 1998) (quoting Arthur W. Campbell, <u>Law of Sentencing</u> § 2:3, at 27–28 (1991)). As demonstrated through this defendant's career of criminal activity, there is a significant need to incarcerate him to render him physically incapable of committing crime. Numerous previous felony convictions, and multiple periods of incarceration, have failed to prevent the defendant from returning to a life of crime. His life of crime comes at the expense of the law-abiding citizens of the United States. A sentence of 264 months imprisonment will provide society with a 264-month respite from the defendant's constant desire to get rich at the expense of others. The longer this defendant is imprisoned, the longer the public will be protected from his crimes.

## <u>CONCLUSION</u>

For the reasons set forth above and in the Pre-Sentence Investigation Report (Dkt. 410), the Court should impose a sentence of 264-months incarceration.  The government intends to provide a detailed response to the defendant's sentencing memorandum in its remarks and presentation at the sentencing hearing.


DATED:  Buffalo, New York, December 29, 2023.


TRINI E. ROSS
United States Attorney


BY:    s/NICHOLAS T. COOPER
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716/843-5830
Nicholas.Cooper@usdoj.gov


BY:    s/AARON J. MANGO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716/843-5882
Aaron.Mango@usdoj.gov